■ In the Matter of BERNADETTE M. DRUMM, Appellant, v WILLIAM R. DRUMM, Respondent. [931 NYS2d 180]—

---

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of three children, Miranda, Nicholas and Matthew (born in 1990, 1994 and 1997, respectively). In May 2006, the parties entered into a separation agreement, pursuant to the terms of which they agreed to share physical custody of their children and to divide equally, among other things, the cost of the children's health insurance and any uncovered medical expenses.[1] In apparent contemplation of that arrangement, the parties agreed to waive any child support "at [that] time." Although not entirely clear from the record, it appears that Miranda and Nicholas thereafter elected to reside primarily with the mother, prompting the parties to enter into stipulations of settlement that referred various issues to Family Court, including child support for Miranda and Nicholas and the parties' respective obligations for the children's health care costs. The separation agreement, as modified, was incorporated but not merged into the parties' May 2009 amended judgment of divorce.[2]

In September 2009, the mother and the father entered into an order on consent wherein they agreed to, among other things, grant each other a "right of first refusal" during any period of time when the parent having physical custody of Matthew would be absent for five hours or longer. As the father often was required to work on weekends, he offered—and the mother frequently accepted—the additional parenting time with Matthew. Shortly after entering into this stipulation, the mother commenced this modification proceeding contending that, having availed herself of the opportunity to spend more time with Matthew, she now had physical custody of him more than 50% of the time and, as such, was entitled to child support.

Following a hearing, the Support Magistrate found, among other things, that the mother's decision to exercise her right of

1. The parties' separation agreement also contemplated providing health insurance for the children past the age of majority to the extent that the underlying policy would so permit.

2. Miranda apparently moved in with her maternal grandmother in June 2009.

first refusal did not alter the parties' shared custody arrangement as to Matthew and, therefore, the mother was not entitled to child support for him. The Support Magistrate further determined that Miranda became emancipated in June 2008 when she graduated from high school and obtained full-time employment and limited any award of support for Miranda accordingly.[3] Family Court, sua sponte, dismissed the mother's subsequent objections to the Support Magistrate's order as untimely and, upon reargument, adhered to its prior decision. These appeals by the mother ensued.

We reverse. Preliminarily, the record before us does not support Family Court's finding that the mother's objections were filed outside the 35-day window set forth in Family Ct Act § 439 (e). Accordingly, Family Court erred in refusing to entertain the mother's objections on the merits.

As to a remedy, although the record before us does not lend itself to a simple recalculation of the parties' child support obligations—particularly in view of the various inconsistencies that exist between the Support Magistrate's written decision, findings of fact and resulting order, and the corresponding lack of clarity regarding the underlying award of child support—the record is sufficiently developed to permit us to review the merits of the mother's specific objections. Therefore, in the interest of judicial economy, we will address the mother's arguments on appeal and remit this matter to Family Court for a recomputation of the parties' child support obligations and, if necessary, the taking of additional proof on this issue.

With regard to the mother's request for child support for Matthew, the mere fact that the mother elected to exercise her right of first refusal with respect to this particular child did not fundamentally alter the parties' shared custody arrangement. At best, the mother's election in this regard resulted in her choosing to spend an additional three or four days each month with her son. In our view, regardless of the burden of proof employed, this minor and entirely voluntary "change in circumstances" is insufficient to warrant the mother's request for child support as to this child.

We do, however, find merit to the mother's objection regarding Miranda's alleged emancipation. A parent is statutorily obligated to support his or her child until the age of 21 (see Family Ct Act § 413 [1]) unless the child is sooner emancipated, which occurs, insofar as is relevant here, when the child "attain[s]

---

**3.** The Support Magistrate also concluded that in light of Miranda's emancipation, the parties no longer had any obligation to provide health insurance for her or contribute to her uncovered medical expenses.

economic independence through employment" (*Matter of Bogin v Goodrich*, 265 AD2d 779, 781 [1999]; *see Matter of Smith v Smith*, 85 AD3d 1188, 1188 [2011]).[4] The fact that a child may work full time is not determinative, as a child cannot be deemed economically independent if he or she still relies upon a parent for significant economic support (*see Matter of Thomas B. v Lydia D.*, 69 AD3d 24, 30 [2009]). This remains true even where, as here, the child in question no longer resides with one of the parties, "so long as the child is still dependent on one of [them] for a significant portion of his or her support" (*Matter of Thomas B. v Lydia D.*, 69 AD3d at 30; *see Matter of Bogin v Goodrich*, 265 AD2d at 781; *compare Matter of Lowe v Lowe*, 67 AD3d 682, 683 [2009]).

Here, although the father testified that Miranda went to work full time after graduating from high school, the record falls short of establishing that she has achieved economic independence. Notably, there is no documentation of Miranda's salary or expenses or the degree to which she continues to receive financial support from her mother. Accordingly, the Support Magistrate's determination in this regard cannot stand.[5]

We also are persuaded that the Support Magistrate erred in failing to achieve some level of parity between the parties by consistently using their respective projected incomes for 2009 in computing child support. Although the Support Magistrate's decision to utilize the mother's projected income for 2009 instead of her actual income for 2008 was well founded (due to nonrecurring income that the mother received in the prior year), no similar explanation was offered for electing to use the father's actual 2008 income instead of his projected—and presumably higher—income for 2009. Thus, while we have no quarrel with the Support Magistrate's overall consideration of the various child support factors outlined in Family Ct Act § 413 (1) (f), the record nonetheless fails to disclose a valid reason for failing to utilize similar income valuations for both parties when

---

4. To the extent that the parties' separation agreement defines emancipation as, among other things, a "child establishing a permanent residence away from his or her custodial parent," we need note only that "the parties cannot contract away the duty of child support" (*Matter of Thomas B. v Lydia D.*, 69 AD3d 24, 30 [2009]).

5. Although Miranda reached the age of majority during the pendency of this appeal, Family Court must, upon remittal, compute the parties' child support obligation for Miranda prior to her 21st birthday, together with their respective obligations for her health insurance premium—at least to the extent that insurance coverage for her still may be available (*see* n 1, *supra*)—as well as her uncovered medical expenses, if any, in accordance with the terms of the parties' separation agreement.

computing their respective support obligations for Miranda and Nicholas. The mother's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Mercure, J.P., Peters, Stein and Garry, JJ., concur. Ordered that the orders are reversed, on the law, without costs, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision.